May it please the Court, this Court has made clear that the Court of Federal Claims must review corrective action decisions using a highly deferential, arbitrary, and suspicious standard. Under this standard, the trial court is not permitted to substitute its own judgment for that of the agency, and it's certainly not permitted to impose its own corrective action when it disagrees with the corrective action taken by the agency. Okay, so before we get started into the heart of this complaint, can we ask you a few threshold procedural questions? Yes, Your Honor. You argued below, at some point, that the reason you shouldn't issue an injunction is that it would make it all moot, and it would be mooted. Why is this case not mooted? Well, because the Court can still grant effectual relief to the government here on appeal. Well, let me ask you. I mean, we had the first year of the contract. That's over. Yes. Could the government not, in its own discretion, have not agreed to have any of the four-year renewals after that and just ended it there? And if it had ended there, wouldn't the whole injunction be done and over with? Well, I don't know that the government, under at least certainly the spirit of the Court's injunction, could have simply ended the contract upon the basis that it wants to proceed with the re-solicitation that allows towards the end of the contract. The government has the sole discretion to decide whether to pick up the option for it. That's true, Your Honor. So, let's just say at the end of the contract is currently in an option year, right? Yes. Okay. So, I think it's March 31, comes to an end. So, if the government elects not to pick up the option, the contract terminates, right? That would be true. Well, that's just technical. It isn't canceled.  Right. The contract, if the government didn't pick up the option. Right. And you're not enjoined from terminating the contract. Well, we're not enjoined from terminating the contract if, say, Sagam was performing poorly or for some reason like that. No, no. It comes to an end. If you elect not to pick up the option, the end of the performance, right? The contract is terminated. Right. But under the trial court's injunction, I mean, the trial court enjoined. Your view that under the trial court's injunction, you are required, absent something else messing up, to abort Sagam, all of the options and go through the entire five-year period? What we don't think is permissible under the trial court's order is to not pick up an option on Sagam's contract because the agency wants to proceed with a resolicitation for the same reasons that it did before and to then proceed with the resolicitation. So the trial court did enjoin us from proceeding with the resolicitation. So you feel like if the government's position is you have to go through all five years in the absence of them doing something else that would allow you to not renew it. But under this injunction, the injunction would hold for a five-year period, not just for a one-year period. That's correct, Your Honor. Yes. Why is that so? To follow through that you elect not to pick up an option, the contract is terminated. And let's say the agency decides then to have a new RFP. Why would they be enjoined from having a new RFP? Because the trial court expressly stated it's enjoined from canceling the solicitation and from resoliciting the contract requirement. They wouldn't be resoliciting the contract. It's a different set of contract requirements when they put out a new RFP. Well, that would have been the same before as well. We don't know that. We don't know that. That's part of the problem is we don't know what the agency's resolicitation proposal was. That's true, Your Honor. And I don't understand the trial court's injunction to say that you can resolicit as long as you change a few things in the resolicitation. That certainly was not an understanding of a trial court's injunction, and I don't think that would be exactly what it is. The way in which the contracting officer was talking, we're going to resolicit, and it's going to take the same request for proposal and put it out and say try it again. No, that's not what the— Well, what is—we need a case or controversy here to proceed. What's your gripe with Sagam? Sagam sued you, right? Yes. What's the dispute? As you said in your motion for a partial stay, you no longer have any disagreements with Sagam. No, we didn't exactly say that, I don't think. What we—we said that we were concerned that there'd be risk, substantial risk that on appeal the court would find this case moved. We now believe that statement was in error. But because we're enjoined from resoliciting— What's the dispute with Sagam about the award decision? About the award decision, but there's still the resolicitation issue in the injunction. You said that statement is now in error. Why do you believe the statement is now in error? Because we don't believe this case is moved, and we don't believe that's even a substantial question. Why isn't it moved? Because the court has enjoined us from resoliciting, and unless this injunction is overturned, the agency can't resolicit on the grounds that the court has erroneously— Okay, so at the end of five years, they can't resolicit the contract. Well, no— Why not? Why isn't that your argument? I mean, honestly, looking just at the pure language of the injunction, you could make that argument. We don't think that's a reasonable reading. What is the government's reading? That for the original contract and for the four-year renewal, the injunction applies and you can't resolicit. But once that five-year period has lapsed, are you reading the injunction to say in perpetuity you could never resolicit? No, we don't— Or is it the five-year mark that you say the injunction is terminated? Right. We understand the not resoliciting to be through as long as SAGIM's current contract is going on, but we don't believe that under the injunction we can decline to exercise an option or terminate SAGIM's contract upon the basis that we believe the proper corrective action is to go forward with a resolicitation without this— Well, that's a matter of interpreting the injunction, right? Yes. So we could interpret it differently if we didn't agree with you. You could. We don't think that would be— But once the contract is fully terminated at the end of five years, then I think you agree that there's no— If this were now—if the contract had just finished at five years, you would be conceding mootness, right? Yes, I think that would be the case if this was— So why is it any different when the contract comes to an end? Because the government says we don't want—it's over. We don't want to renew. And it's our sole and exclusive right and our discretion to do that. Because we don't read the trial court's orders allowing us to end SAGIM's contract upon the basis that it wants to go forward with a different corrective action, the original corrective action they proposed. It may decide that they're going to close the embassy. We don't know why the agency would decide what it would do once it decided that it didn't want to continue with the option. Sure, that's speculative. And if that were to happen, then yes, the case would be moot if the agency were to terminate for a reason such as that. But it's ongoing right now. If we were to reverse, if we were to grant you the relief that you were seeking, what happens then in terms of is there any remedy for what's happened until today? I mean, for tourists or a harm to SAGIM, do you try to recoup the money and unreel this? Or do you agree if we reverse starting tomorrow, what that does is give you the ability to terminate the contract and move forward? Right, it's the latter. My understanding is the agency would then start the process of preparing for a resolicitation and then terminate or not extend SAGIM's contract at the end of that process. One of the things that's been most confusing about this case is you're throwing in mitigation but never explaining it. So your position, as I understand it before us, is, well, part of the problem of what the Court of Federal Claims did is we didn't have an opportunity. We may have mitigated. We still kind of cabin that all in terms of speculation. So in your view, if we were to reverse, what, if any, obligation do you have to mitigate? And who, if anyone, gets to review whether the mitigation is adequate, given the circumstances of the problem? Yeah, under FAR 1.602-2, the contracting officer would have both the right and duty to explore whether there should be any mitigation measures as a result of the disclosure that occurred in the prior procurement and to conduct a reasonable fair share. Okay, and what if they decide, no, we don't need any mitigation? It doesn't go back to, well, Judge Sweeney may be gone by then, but is that not reviewable under any standard by the Court of Federal Claims? If you decide we can go forward with the contract, even given these problems that preceded it, and no mitigation is entitled, is that reviewable by anyone? Yes, that would be reviewable by us. So then it just goes up here again, and the Court says what it has already said, in two opinions, which is, I can't see any way to mitigate this. And then you lose. So then we're here again two years from now. Not necessarily, Your Honor, because at that point we— Well, it's possible. It's possible, but at that point we would have the new solicitation, which may have different terms before it that may, I mean, maybe the laws change. We don't know what's going to happen with the new solicitation. We didn't know that before the trial court. So that's why it was inappropriate for the trial court to cut off the agency's opportunity to take these new mitigation measures and instead to disqualify an innocent offer. Well, it wasn't up to you. The question is who should do what then, and now it's years past. But at the time it was all ready, fresh. So why did the government not have an obligation to say—to be straight up and say, no, the issue before you is we don't want to do any mitigation. And then she could decide that. If they said we might want to do mitigation, then she has to back off and say, well, I have to wait three years and see what mitigation you come up with and see if it's more satisfactory. You didn't give her any meat on the bones here, right? Because the question before the court under Axiom, Florida Power & Light, these decisions, was simply whether the agency's cancellation decision was rational or not. No, it's not just a cancellation decision. It's cancellation and resoliciting with a tourism wall. So that's part of the problem here is that the question is whether the corrective action was rational, right? Yes. Okay. So part of the corrective action was to resolicit with Torres and Ball. Yes. Right. So what was the rationale for allowing Torres to proceed in a resolicitation with no attempt to mitigate the problem? But that decision hadn't been made yet. What was the rationale? The contracting officer in the agency proposed to resolicit with Torres and Ball. Yes. Just knowing that Torres had information it shouldn't have. Knowing that it could use that information in the resolicitation information it didn't have. What part of the corrective action was designed to neuter Torres' possession of that information? The agency hadn't addressed that yet because there was no resolicitation. There was nothing in the administrative record. Because the agency hadn't addressed it yet. Why didn't they address it? For one thing, there's nothing in the FAR that requires them to address a new solicitation at that time. If they're going to propose a resolicitation that's unlawful. But they haven't set forth the terms of that solicitation yet. We don't know whether that solicitation was unlawful. Wasn't that your burden? How else was she to decide whether or not your action was, you had a rational basis for cancellation? Is it part and parcel of whether or not the contract should have been canceled or not? It's intertwined in my mind. That issue about whether or not there's appropriate corrective action or whether the resolicitation is intertwined with whether or not Torres is going to get to participate or be disqualified. It was held to be intertwined and you tried to object to that by saying it wasn't right. The second part, you lost that. You haven't appealed the intertwined nature of the corrective action, which is cancel, resolicit with Torres involved with no attempt to cure. So just let me tell you where I'm from. A rationale to proceed with Torres with no attempt to cure is arbitrary and capricious, per se. Okay. And then there was nothing zero in the administrative record about mitigation. Correct? You said that in your brief. That's correct, Your Honor. Our position is that the court, excuse me. The duty of the court was to judge the rationality of the corrective action based on the administrative record. And you have an administrative record that offers zero rationale for the resolicitation. And it has to be arbitrary and capricious. And if we accept that position, I mean, we believe we've taken... You tried to separate resolicitation from cancellation in arguing you weren't there, it was your colleague, because he said, well, it's not right. The whole question about the resolicitation isn't right. You shouldn't be considering that now. You should only be looking at the cancellation. She disagreed and held that the two were inexorably combined. You have not appealed it, really. We've taken the position in this appeal that canceling the solicitation was sufficient to remedy for this procurement. But you have not appealed the fact that the two pieces of the corrective action are tied together. We haven't appealed on ripeness. When you haven't done that, explain to me what the rationale in the record is for resoliciting with Torres on board. Well, the rationale for resoliciting... On the record, what is it? It would be that Torres is an innocent offeror here. There's nothing in the record that suggests Torres has done anything wrong. The decision by the contracting officer was that State did something wrong here in providing this information to Torres. Torres did nothing wrong in responding to that information. We know that. We know that Torres didn't do anything wrong. So it's really a judgment call then for the agency as to how to mitigate it. If the government poisons the well on Torres, Torres may have a cause of action against the government for poisoning the well. No, I mean the agency has the discretion to take the proper corrective action here. Part of the factor that goes into that is did Torres do anything wrong here? That's a factor that the agency should consider in deciding whether it's going to disqualify Torres from a five-year contract. I'm going to give you time to just speak on your own, but if you could include in that, you're telling us Torres did nothing wrong. Does that mean that essentially she should have assumed that he was going to be allowed to participate? So anyway, I'm done. I'm not going to ask you. You get – your clock is done. You get minutes or as long as you need to respond to all the questions that have been put to you by the bench. Sure, Your Honor. So the agency made a rational decision here that it wasn't going to disqualify an innocent offer. I mean it's a factor that the agency should consider that cancellation is an option as is disqualification. In this case where Torres has done nothing wrong, disqualification seems an unduly harsh remedy for Torres, and that's a judgment call, a value judgment for the agency to make, not for the court of federal claims. Is that reviewable by the court of federal claims? It's reviewable under the highly deferential, arbitrary, and capricious standard, but it's not arbitrary and capricious for the agency to make a value judgment that we shouldn't disqualify an innocent offer from a procurement. And even if we were to accept the premise that Judge Klobuchar had laid out earlier that this – that the agency should have had mitigation measures in its original corrective action, well then the answer to that is to either remand to the agency for further consideration of those mitigation measures or to simply set aside the cancellation, which would allow the agency to take any rational action from there. Just let me ask you a question. Does the agency always get a remand when it's proven that their rationale was not rational? Right, because yes. It doesn't mean just that the case comes up. The question is, was the agency's action rational? You look at it and say, no, it's not rational. Does the court of federal claims require to say, okay, we'll send it back and see if you can come up with a better rationale? Ordinarily yes. There may be some exceptional circumstances. Ordinarily yes? Ordinarily yes. Do you have a case that's not rational? Yes, Florida Power and Light is the leading case, the Supreme Court case that we cited in our brief that says exactly that, that the trial court doesn't get to make – just because the trial court found that the agency didn't consider a relevant factor or it was irrational for some other reason, that doesn't give the trial court the ability to make a de novo determination of what the proper action should be by the agency. Axiom stands for essentially the same proposition. We're reviewing the decision that the agency made. We're not deciding what the best corrective action here is or even what the only corrective action could potentially be, because this is a discretionary determination. We're reviewing the agency's action. The agency action was to re-solicit the contract with Torres Participating. Yes, that was part of it. And if that was irrational without any mitigation measures in place, then the court should have remanded that to the agency so it can consider what mitigation measures should be in place so that it doesn't have to disqualify an innocent offerer if it doesn't have to. And the agency was not under an obligation after this long period of time for discovery and the hearing and everything else to say, in the alternative, if you say we propose the following mitigation. Don't you think in a minimum, looking at this from the outside in, that the agency in all of this hearing and this proceeding, if they knew what the issues were, the agency should have come up with whatever mitigation? I mean, now what you're suggesting is we go through 10 years of litigation. We've had this, we send it back, then the agency decides if it's going to mitigate. If it says no, it's going to go back up to the Court of Claims and presumably she's going to do the same thing. If it comes up with some mitigation, then you're going to go and make arguments to the Court of Federal Claims. Don't you think the way to proceed here is if the agency is on the ropes and saying we are not going to disqualify Torres, but you haven't even said in your briefs, but all you say is, but we may do mitigation. You haven't even said we have mitigation efforts and we think they are satisfactory so we should have an opportunity to have those reviewed. You're just speculating to us that maybe we'll do mitigation and maybe we won't. Do you understand the problem? But to argue that the Court should affirm because we have these mitigation measures that we're willing to put in place now, that would violate the Chenery Doctrine. Do you have mitigation measures that you're willing to put in place? Because I read the briefs. Show me in the briefs because all I see are mays and maybes. I don't see, did you say in your brief we have mitigation measures that we want to put in and therefore you should remand to us? We did not affirmatively state that we will take, that state will take certain mitigation measures. You're correct. We said state may, we gave some examples of measures that state may take. You had two suggestions. And there's potentially others as well. We don't know that. Potentially in life, yeah. So you're asking us for a remand so that you can consider at this juncture whether or not there are immediate, one, whether you want to do any immediate mitigation at all, and two, whatever mitigation we might do. We don't know what those mitigation efforts are. And then it's going to come up here on a challenge again. Are you asking that we get rid of the permanent injunction in the interim or that we keep the permanent injunction in place while you're trying to see if you can come up with satisfactory mitigation measures that will satisfy the Court of Federal Claims notwithstanding the deferential standard review? Yeah, if the court were to determine that the corrective action decision was arbitrary and capricious, it would be appropriate to leave the injunction in place to the extent of setting aside the cancellation so that it returns the procurement to the status quo ante. And at that point, the agency can make those decisions about what mitigation measures it should take in a resolicitation because it's no longer enjoined from resoliciting. And I think this is all going to, we've got how many more, you said that you consider the permanent injunction kaput at the end of the five years. We're like two and a half years away from that, right? So you're suggesting we remand it. You get a chance to do mitigation if you want. That gets appealed to the Court of Federal Claims. That then gets appealed to us. And don't you think it's likely that the questions that we had this morning about mootness will be well underway by the time we get to this? Well, my understanding is that the last option, the last of the four-year option periods would expire April 1st, 2027. But regardless of the date, we don't know that it would come back to this court. It may or may not even come back to the Court of Federal Claims. SAGA may be satisfied with the mitigation measures based on changed circumstances. We don't know what's going to happen there. What the trial court couldn't do was to require the agency to prove the actions it didn't take were rational. If that were the case, then the Axiom decision wouldn't make a whole lot of sense to say that the court can't take extra record evidence ordinarily. Because if the agency is going to decide de novo what the appropriate corrective action is, it should be doing it based on all of the relevant evidence and all of the relevant arguments. But the Chenery Doctrine says that we can't argue for affirmance of an agency's decision when that wasn't made by the agency. We can't argue on grounds that weren't made by the agency. And the Axiom says we don't ordinarily put extra record evidence into the record. So we shouldn't be making arguments that you should affirm, we shouldn't be arguing we will take these mitigation measures and you should affirm on that basis. Because that would be improper under SEC v. Chenery. But we wouldn't be here today if the agency had understood its obligation to have to have a mitigation if they were going forward, and if they had proposed a mitigation that was effective. I mean... The problem is that what was presented to Judge Sweeney was a corrective action, a two-part corrective action, canceling and then going forward immediately with Torres on board, when there was no rationale for letting Torres proceed in that freeway. What options did she have? And the problem was that she said, well, there's nothing in the record about mitigation, and you didn't even present mitigation at all in your motion for judgment on the administrative records. You brought it up as an afterthought. She said you were tardy, right? And your attempt, which would have succeeded if you convinced her that the whole question of re-solicitation wasn't right, but you didn't convince her of that. What Judge Sweeney could have done and should have done if she found the cancellation and re-solicitation to be arbitrary and capricious is to either remand to the agency or to simply enjoin the cancellation and return the procurement to the statute of limitations. So you blame the Florida Power Argument of Peclet and Alpine to say that, I mean, certainly your brief to this court doesn't start off by saying, assuming for purposes of argument that their actions are arbitrary and capricious, the Supreme Court requires a remand. And I didn't see you making that argument. We did argue for a remand in the supplemental briefing that she ordered. We did not argue for the remand because you said that the question of the re-solicitation wasn't right. But we argued for remand in the supplemental briefing as well. Did you cite Florida Power? Because I'm looking and I'm not sure. I don't recall if the… No, I don't. Did you cite Florida Power before? Oh, you did cite it in gray, not in red. My problem is, and I hate to say this, I think the government hasn't done a good job here in presenting these issues either to Judge Sweeney or to us, so we see what the right resolution is. If what you're saying is true, and where a case comes to the Court of Federal Claims, the question is, was the agency's corrective action rational on a highly deferential DEL or otherwise standard review? And the judge looks at it and says, well, what I've got here, excuse me, it's not rational. And so then the judge says, well, I looked at the book and see what I'm supposed to do when that happens. I'm supposed to remand it to the agency and see in case you come up with a better rationale. And that's required. That's what you're telling me today. Yes. And if I go back and look at the record that was in front of the judge, I don't see your attorney telling her that. I don't see your blue brief telling us that. I see your blue brief telling us, oh, this wasn't even price information. There are a few arguments like that that, excuse me, are frivolous. But our blue brief did argue that it was improper for her to disqualify Torres, and even if the action was arbitrary and capricious, it was improper for the trial court to disqualify Torres or to award the contract to Sagam International S.A., Sagam's plaintiff's parent company. Why doesn't Parcel 49C support what the trial court did? Parcel 49C actually supports our position because what the Federal Circuit, what this court said in Parcel 49C, was that it's fine to enjoin a cancellation and to return the procurement to the status quo ante. But from there, the agency can either award the contract or terminate the award for any lawful reason. And that's all we're asking for an opportunity to do here, if the court were to agree with the trial court that this was an arbitrary and capricious corrective action decision, is the opportunity to go back and take whatever actions are necessary for a reasonable corrective action, one that likely should not include disqualifying the agency at all. That's not a jurisdictional question, right? So, I mean, it's not a matter where I can just say, well, Judge Sweeney, you sure blew it, because even though the government wasn't arguing for you to remand on the Florida Power Theory, you should have done it. So, I'm just trying to think about what it is, the message we're sending to Judge Sweeney, if we accept your argument a little late in your gray brief that the Florida Power Decision says, even when you behaved arbitrarily and capriciously, you get another bite of the apple. Well, the question, we did argue below that the proper remedy, if the court were to find the corrective action arbitrary and capricious, was to remand. We definitely argue that in the supplemental brief where she specifically asked us to address that. I don't recall if we specifically cited Florida Power in light, but there's no problem on appeal with citing new case law that supports an argument that you've made below. And if I need to file a 28-day letter for that point, then I can, but that's not problematic. Can I ask you one other question? And this is kind of a judicial efficiency thing about going back and doing the song and dance below. I think one of the things that cuts against you, maybe it's not as a legal matter, but just as a practical matter, one of the overt things about the briefing here is the dispute, which the government continues to apparently not be willing to accept that the information, the problematic stuff here was not just a citation to statutes and to laws and collective bargaining agreements. And Judge Sweeney spent a lot of time describing all of the stuff and the information given to Taurus, and I don't want to get into it because it may be confidential, but there was a huge dispute. And in your briefs, you don't move an inch away from, it seems to me, from your view that the problem here could be, which goes to how you're going to go about trying to mitigate this, if the government's view is, as it is repeatedly in blue and gray, that this was just a matter of citing, knowing about what the rules and the statutes are, so it can be remedied by having a solicitation that just lays out the statutes. Does that continue to be your position, or can that be dealt with in terms of a remand decision that tells you what you have to accept as a given, given the fact findings of the Court of Federal Claims? Our position is that the State Department is the one that should be making those determinations about the precise nature of what was revealed and what's necessary to remedy that revelation. So the Court of Federal Claims' findings in that regard, and there were numerous findings in her, are those just to be, can be ignored because it's the State Department that has the unreviewable discretion to decide that? Well, I wouldn't say unreviewable discretion. The Court can still review for whether the new corrective action decision was arbitrary and capricious, but ultimately… Well, didn't she conclude that? No, she concluded that the prior corrective action was arbitrary and capricious and that as a remedy the agency is required to disqualify an innocent offer without… But in terms of what the problem was with the solicitation, which goes to what kind of mitigation, if any, would be necessary to resolve the problem, she made very explicit findings about what the problem was, and your briefs push back on what the problems were with the solicitation. So do you have to abide by her review of those proposals, or do you get to go back to square one and say, we think the only problem was that they didn't cite the statutes, and so we find it completely mitigating if we just cite the statutes, and we'll stop. Well, I mean, the contracting officer did find that there was a proprietary benefit involved in one instance, and, I mean, I believe we even conceded in our reply brief that there was one instance that may have even involved SAGM's application of a labor agreement. So, I mean, we're not saying that the agency should come back and say that, you know, this stuff is harmless information and let's just move on from here, but it's the agency that should ultimately be making the determination about how harmful it is and what mitigation measures are necessary to do that. Part of the difficulty here with the two proposed methods of mitigation are not private. I mean, one was that the contract says, oh, you must comply with all local rules and regulations, right? The previous solicitation. That's the previous solicitation. So when you start with a contract like that in a foreign place, it's kind of a trap for the unwary because you better make certain that you comply with the rules and regulations that state thinks are required, right, because otherwise you're going to be noncompliant. Without state having even stated on it. Of course. And so both parties start off and they say, well, we've got to figure out which local laws to apply. Sure, let's talk to some lawyers. SAGM had been there a long time and probably had an idea of which ones it thought, and so, you know, it had that listed, its list, so to speak. And so the contracting officer's mistake here was she gave that list to the other side. Yes. So the other side says, well, if SAGM is going to comply with those, I probably better comply with those too. We don't know whether they had that information before or not. So even the suggested mitigation things here were made up by the lawyers. They didn't come from a contracting officer. I think what the presiding judge is talking about here is that your whole idea, we send this back to allow some kind of mitigation, you people may be arguing, well, the mitigation is only with regard to the provider's information because the rest of the stuff wasn't price information because you've been unwilling to give that argument up. I mean, it is our position that states should be able to make that determination of what's proprietary and what's not. I mean, even accepting everything that the trial court said, that this is competition-sensitive information and, you know, relating to SAGM's costs and all that, the trial court still can't disqualify an innocent offer. It can't direct the award. Well, why not? I mean, you keep saying, you know, but it can't do this. Florida Power & Light, Parcel 49C, Axiom, all these decisions. The Florida Power & Light is you have to do it over again, right? Right. So you'd have to do it over again even if they hadn't. The disqualifying charge isn't the reason why Florida Power kicks in. All I'm saying is what's wrong with disqualifying a party where the government poisoned the party and said, you, Mr. So-and-so, we poisoned you, and you cannot participate fairly in a competition? I mean, to approach it that way, it could, I mean, it could potentially. In the order of things. So why? You don't have a case that says that Joe Sweeney couldn't disqualify. Well, I mean, we did cite a couple GAO cases that overturned decisions that were where the agency disqualified someone for doing nothing wrong. That's not binding. You're correct. I mean, the bottom line is the agency has the discretion whether to take actions such as canceling solicitation, disqualifying, or any other appropriate action. It should be the one to make. If an offer is to be disqualified, the agency is the one that should be making that disqualification decision, not the Court of Federal Claims. That's the major problem that we have. And just one final question. Are there any circumstances in which the agency kind of waives its ability to do it? Like here, couldn't one fairly say, you had a long time, we were going through all this litigation, you did throw out possible, there are possible, it's speculative, but we have possible mitigation. At what point in the proceedings does the agency waive its right to do that? When it's before the trial court and the trial court is giving you an opportunity to say what mitigation would provide so that she could appropriately assess the propriety of that, and you come in and here we are three years later or two years later, still not having any idea what the mitigation would be. Is there a potential waiver? I mean, given Florida power, at some point does the agency have its chance and waive its opportunity when it doesn't come forward? Well, in this case, we did argue before the trial court that remand would be the appropriate remedy if the cancellation were found arbitrary and capricious. And at what point did you make that argument? You didn't make it in your motion for judgment on the administrative record. I think we, let me, in Appendix 2, we did, the court cites our reply brief as arguing for stay in remand. And then the court asked for further briefing. No, no, the court didn't say it was too late. She actually asked for further briefing on the various proposals that the parties had made for a potential remedy in the case. And she didn't find that the government was too late in arguing anything for purposes of injunctive relief. She found that the government was too late for arguing for purposes of rightness and for purposes of the merits in terms of mitigation measures. That was what the trial court had found there. But in this case, the agency made- So you're basically arguing your challenge is not to her decision on the merits, but to her decision in denying your motion for a stay. We've challenged both. I got too technical here. Isn't that correct? We've challenged, wait, not the state. We've challenged both the decision on the merits and the scope of her injunction. But her desire for a remand is only connected with the motion on the injunction. Yes, that's what I understood us to be discussing here at this part. Thank you. Thank you, Your Honor. Good morning, Your Honors. Tom Coulter for the appellee, Sagam Securitate. May it please the court. The reason we're here today- We know why you're here. Can you point us- You know the record probably, hopefully as well as we do almost. Can you point us- I do recall, as Judge Clevenger said, that she said we had waived their right and should have raised it earlier on mitigation. Can you point us to where she said that? There is a footnote in the court's opinion, in Judge Sweeney's opinion, saying that the supplemental briefing was ordered, but it was not to be on the merits. No more briefing, no issues. Yes, Your Honor. That's correct. And so that is why she considered the mitigation argument to be too late for consideration by the court. Okay, so where did she say that? I'm just having a hard time finding it. Do you happen to have it off the top of your head? Because she did- I recall that she did say that it's too late and they should have made it earlier. Yes, she did. I'm sorry, Your Honor. Is it on page 35? Defendant also contends the court failed to consider how the state might mitigate the CO's improper disclosure to TOR. Defendant did not raise this argument, either in a motion judgment on the administrative record or in its reply brief. In other words, in its briefing on the merits defense, did not suggest that a mitigation- Well, I think that's it, right? That is the correct site, Your Honor. I'm sorry, I was looking at the wrong opinion. That's right. That is her second opinion. That's right. What about Florida Power? I don't really think Florida Power comes into play here because- What about just the basic proposition in a bid protest type situation where the question is, was the agency's corrective action sustainable as rational? And the decision of the court is, no, it was not rational. Right. Your adversary says the correct law in that instance is then to remand the case, assuming a request was made, et cetera, et cetera, et cetera. Right. Let's assume those points of your hypothetical, Your Honor. In the typical case, that is what Florida Power says. This is far from the typical case. Judge Sweeney considered that, in her opinion, and said- Well, she said it wasn't a typical case. Do you think she actually considered the remand in the Florida Power context? I do, Your Honor. In fact, she says there is no need for remand, specifically, in her opinion. So she was aware of the Florida Power issue, and she specifically says there is no need for remand in this case. Where are we? Merit's opinion, or- It is in the Merit's opinion, her first opinion, Your Honor. It's Appendix 23. The court rejects defendant's favored choice among the actions proposed by the parties. There is no need to remand the agency's cancellation and resolicitation plan to the HCA, the head of contracting activity, to obtain a second opinion as to whether the plan is rational and whether the agency should reconsider its decision not to disqualify tourists. Is her basis no more so a judicial efficiency sort of basis, or why do you think she's continuing? I think, Your Honor, again, I'd love to have this case be some broad pronouncement of a principle, but it really is going to be based on the unique circumstances of this case, and I think that's what Judge Sweeney took into account. She is saying, in the normal course, she understands the process, but here it's the endless loop of protest on disqualification that we would have ended up in, and she felt, though, and I think part of it was, frankly, the government's positions in this case, that she felt the CO clearly was not going to disqualify Torres. She made that clear. The government was pushing back on whether that was proper or even allowable, and I think in her mind, the remand process was going to be ineffectual, and so she just sort of cut to the chase and said, this is the only rational outcome to cure the harm to the competitive process, and so that's why she went. Well, do you think that's right, though? I mean, if the government says it has the right to mitigate, I take your point on disqualification, but don't they get to try? I mean, they do have a lot of authority here, and the discretion is really, you know, very little discretion on the judiciary, so why don't we have to let them try? Fair point, Your Honor, and I think Judge Sweeney considered that. This is, again, it's an unusual case, and I think we have to look at the record, as you were discussing with government counsel. The contracting officer had already considered whether mitigation was something that was appropriate here. Wait, how do we know that? In her declaration, which was submitted late in the game, right before the hearing. So it wasn't in the administrative record? It was not part of the administrative record, but it was considered by the court. Is it in the appendix? It is, Your Honor. It begins on page 3042, 3042. And in that declaration, while raising some concerns about that costs may have changed because of certain issues in Senegal at the time, and remember the ironic thing about this declaration is that the first part of it was we're going to be consigned to paying too much if you disqualify Torres, and then the second part of it is we're worried that Saddam isn't paying its guards enough because there are conditions that changed in Senegal, so it's a little confusing as to what the position was. But in paragraph 19, on page 3044, appendix 3044, she talks about a stay in remand with further delay. So she's against remand, first of all. So the government is arguing for it, but their own client doesn't want it. And she is inclined to go forward with the contract. And how do we... Well, yeah, but that's a little unfair to her. Yeah, she'd like to win, but that doesn't mean that she's given up a lesser win, which is where the government, I think, is not. Right, and so what is the best evidence that mitigation is really not necessary here? I think it would be that they've awarded us the contract. And this goes back to a point on mootness. Just to stop on the mitigation issue for a second. Yes, Your Honor. It seemed to me that the two proposals for mitigation that were suggested in footnote 2 on page 5 by the government in the later briefing, the first that, well, simply have the parties each tell you which local law they think applies, didn't seem to me to be very effective, even suggested mitigation, because it still raises the problem of somebody missing something and the state not knowing which one. The second proposal, which was the state finally says, here, we're going to tell you exactly which local laws apply, seemed to me to level the playing field, because then whatever Torres' knowledge had about what Sagan thought might apply seems irrelevant because the government's telling you. So it kind of seemed to me like there was a way in which you can deal with this, but what it means is state loses its opportunity to play gotcha, which it may like to play, in a contract situation when they say, comply with our local law, but we won't tell you which one it is, and we'll tell you later, gotcha, you forgot, you missed it.  I think it puts state in a position of being the expert in every country all around the world of that country's interior laws, customs, practices, and I don't think the State Department wants to go there. I'm not trying to suggest that state on purpose puts out an RFP that labels gotcha, but it is a trap for the unwary. It is a trap for the unwary, and of course that is why the essence of the compensation plan was to make sure that the local entity understood the laws and would comply with it, and that therefore state was comfortable that it was getting a compliant compensation plan and wouldn't face any problems with its own contractor having violated local law. Can I just think about what happens if we were, you see, listening as I do through all of this, it seemed to me that the best hope the government has to prevail here is to convince us that its Florida power argument was made below, that it was actually made in the blue brief here instead of laid out in the red, et cetera. And so assuming that we agreed with that and we said, oh, there's a mistake here, she should not have entered this injunction. Now, we vacate the injunction. What happens? Your client is in the midst of option year two, I think. Yes, Your Honor. Right? So if we enter this order, we are throwing a wrench in the machinery, right? So what happens? I think as was discussed by government counsel, I think what happens is it would give the government the right to terminate, and they pretty clearly indicated for some reason they just don't want the incumbent of almost 40 years to continue, that they're going to terminate, they're going to engage in a... And what about the current contract? I mean, are you relieved of your obligation to perform? We would be. I think they'd have to get our consent to... I mean, you could just walk away and say, take your guards away tomorrow. That's right. And if you don't like that, here's the price you'll have to pay. And that may not be good for state. In fact, they have us locked into a contract right now with prices... Can I ask you, I guess I'm getting a little confused about this. Sure. Well, going back to the very beginning of this argument, I'm sure you were listening attentively. Yes, Your Honor. We were asking the government questions. So the first question is, is this case right? And did you agree with the government's answer that one, they felt that under the permanent injunction they had to continue with the extra five years or else they would have been in violation, point one? Do you also agree with the government that at the end of this five-year plan, like 2027, he said, you're done and the permanent injunction is gone and they can do whatever they want, at least in this case? Do you agree with those two premises? I do, Your Honor, but let me add this. I do agree with those two points. I think the injunction was designed to make sure that Sagam had the full benefit of the contract. So that the government did not have the ability to stop these additional years. Right, because otherwise... Okay, so you agree with that. What about the second point? I do agree with that. And I think the ruling is to govern the solicitation, which was a five-year period. So I do agree with that. Now, having said that, I'm not saying we wouldn't challenge a later solicitation, but I don't think the injunction... So you might argue it was intended to go on in perpetuity. Well, we'll get to that if we ever have to get to that. What about, I mean, Judge Klovenger just mentioned if we were to vacate the injunction and remand, do you agree that if we were to keep it, we could remand it even if we agree with the government, the contracting officer should, in the first instance, have had the ability to try some mitigation and see if it could pass muster that could leave the permanent injunction in place until that happens? That... And I want to make sure I understand Your Honor's question. Is it that you can order the remand or allow the remand? Well, we would order the remand. I don't... See, I think that's a decision for the Court of Federal Claims under Rule 52 as to whether... Oh, you would order the remand back to the Court. I'm sorry. I was speaking of a different remand. Yes, yes. No, Your Honor. No. No, I was speaking about the remand to the agency. So, I mean, we could do one of two things if we were inclined to see some path in the government's argument that they should have another chance. We could keep the permanent injunction in place or we could remove the permanent injunction, which I think would create kind of a weird interim circumstance, which, you know, could create more havoc that's already been created. But, you know, I guess... I... Just to level check, Mr. Fletcher, though, I know that we were talking to Judge Clemenger. You were talking about kind of like the laws and the public agreements, but was there also a proprietary benefit that was disclosed? My understanding was yes, but I'm trying to be a bit vague in light of the confidentiality concerns. That is what the record reflects in terms of the contracting officer's findings. In her memorandum, she identified mandatory benefits that were disclosed and what she deemed a proprietary benefit. There was also, as government counsel pointed out, some information as to basically how to price the contract over a period of five years because there was information about changes in labor rates that occur each year on the contract, which was clearly not publicly available and given to the other side, which would have helped them price the five years. And in addition, you know, I don't think it's necessary to go through based on the discussion, but there's a lot more information than laws and regulations that were given to the other side, which is why the contracting officer concluded it was, in fact, a Procurement Integrity Act violation and it did, in fact, impact the procurement. And that's... Are you comfortable with everything the Court of Federal Claims said, that if they were to go back and just list the relevant statutes and here are the relevant existing collective bargaining agreements, that that would be insufficient as a mitigation remedy? And do you think that it's a fair view of reading the Court of Federal Claims that she's already decided that? Yes, I do, Your Honor. I think, in this instance, to list them, first of all, is to take our work product and list them out for TORES, which really doesn't get you back to the same point where we are now. And the State Department has already said that it's impacted the procurement. And so we can't take that knowledge away from TORES. And I think, by the way, on an innocent offeror front, I mean, that... The State Department has been sort of supremely focused on the unfairness to TORES, who, as I understand, they don't represent. But they're really concerned about the unfairness. There's no consideration for the unfairness to the procurement system as large, which is sort of their responsibility, nor is there any consideration to the harm that it does to Sagam. It's longtime incumbent. Not to mention the fact that the... Without the mitigation that the judge found was necessary, basically allows the government to benefit from its own Procurement Integrity Act violation. I mean, I'm not sure why the government wouldn't always do this, because they're going to get... Well, I don't want to be suggesting that the government's not acting in good faith. No, no, no, no. Do you think this case would have been different, or the government's arguments would have been different? Let's assume they had four potential... four offerers, rather than just being left with Sagam as the only one. Because some of the arguments I read that the government is making is, like, this judge hand-picked the contractor. Is that just a matter of the nature of this, as you said, unusual case, where there's only one man standing? Would it have been a little different or easier if there were several offerers still in the pot, and then the government had more than one... You know, you understand what I'm saying, that her result dictated you. But that, to me, was only because that was the nature of the contract. It happens to be. It would have been three of you left standing. I do agree with you, Your Honor. I think that made a big difference here, and I think that's part of why the government was bothered by her decision. I think, right, if they had had three other choices, and all she had said is, I'm putting it back, status quo ante, they would have gone through... She would have said, and go through your award process, which is what she said. They would have then chosen from one of the three, and they would have felt like they're making a choice as opposed to having to select Sagan because they were the only ones left in the competitive range. I do agree with you, Your Honor. I think that was a big factor here. But I just... The mitigation idea, again, I don't know how long we've been at this, but we've been at this a while. There hasn't been any... There's no record evidence of any suggested mitigation. And in fact, the government wanted to go ahead and re-solicit, and in fact has gone ahead and awarded us a contract in 2021, October 22 of 2021, with no change. So there was no change circumstances. All the things that they talked about might be possible didn't happen, and in two years of operating that contract, there have been no changes. So I'm not sure what the interest here is, but it's going to end up with a termination, a re-solicitation. I would suggest... Well, it probably ends up with a bunch of bridge contracts for you guys, which is what you were living under in the earlier stage, and you probably even had a bridge briefly, in this case. We did, Your Honor. Because the dates don't line up. We did, Your Honor. That's exactly right. And that's what would happen, presumably. We've got to work out a new price, because it's a brand new contract. But presuming we can do that, then the government will have the same services it's had for almost 40 years by the same contractor protecting the embassy. And that is where, again, this should lie. Now, I did want to add on the mootness point. It's clear to me now that the government's... The government obviously isn't unhappy with Sagan. I mean, if you were not performing the contract to protect our embassy people, they would have gotten rid of you. Yes, sir. So there's no... In an Article 3 case of controversy, there's no dispute between the plaintiff and the defendant in this case. No, Your Honor. I can't see one, and your adversary hasn't pointed to one. No, Your Honor. As they said, they want to pursue this appeal to vindicate their interest in this case. And he said his interest in this case is that he thinks a court-claimed judge should not be allowed to disqualify a bidder. Only a contracting officer can do that. And that's the rule of law he wants to get established for future cases. It has absolutely no impact on this case at all. Your Honor, I think you're exactly right. I think that is the Justice Department's interest in this case. If the ruling were clear that all the judge did was disqualify because it was the only rational, corrective action, and there really isn't any debate about it, then I don't think the government has as much of a problem with her decision because she's not disqualifying taking an action of the contracting officer. She is merely saying the only rational... The only remedy I have is this. That's right. And the remedy that was suggested, which was to remand and let her have a do-over, she rejected. That's exactly right, Your Honor. So, I mean, I think, legitimately, if the government, which, in my opinion, has not done its usual job of presenting the issues as clearly as they might have to help us, if we like the government, if we feel the government's argument that a remand is required, so be it. It'll happen. And it would seem to me that we can give Judge Sweeney authority to decide whether to leave her injunction in place or to amend it or reissue it or do something with it. And she's going to be hearing from the two of you as to what has to happen to allow the remand to go forward. Right? I think that's right, Your Honor. The only other thing I would say, and I just want to mention this, on the mootness point... And you say, on the other side, if we see this case as... We used to call them sparks in law school. This is an odd case. And if we see the disqualification as not an affirmative act of replacing the duty of the contracting officer, we simply had no other remedy. It's a sport, it's a one-off, it's not likely to happen again. I mean, if this case were indeed moot, there'd be no exception here, right? Right. So this isn't going to happen again. And that's, I think, the point I wanted to mention, is Judge Sweeney mentioned that the government's concern about mootness could be ameliorated by taking two steps. One was to file a motion to stay pending appeal in this court. That's right. Which they did not do. Number two is to rely on the exception, which, as Your Honor just noted, this is a five-year contract. They had plenty of time to review it. They didn't need to award us the contract. It could have just gone on. It's a two-part test. You not only have to have a shortness of time, but you have to show this isn't going to happen again. Right, but you have to have both. I know, but for the government to say this is going to happen again would be very embarrassing for the government. All right, I think we've had enough. Thank you. Thank you, Your Honor. Thank you, Your Honor. Just to address the last point first about the case in controversy. Just because the government doesn't have a problem with how SAGM is performing right now doesn't mean there's no case in controversy in this court. The government does not necessarily want to go forward with the contract. Do you think that it's unlikely the set of facts would be presented to us again, just following up on what Judge Cluttinger just asked for opposing counsel? The specific set of facts, sure. Yes. If the court were to affirm in this case, do I think there would be other cases where the court may order an agency to award to another, to an offeror, or to disqualify an offeror? Yeah, I think that very well could happen again in the Court of Federal Claims if the court were to affirm here. If the court were, and certainly our position in this case is not moot, but if the court were to find it moot, it should at the very least vacate the trial court's order because the reason it would have become moot is because we followed the court's order, not because of anything we did not care about. Would your position be different if there were, as I posed to your friend, a hypothetical, if there had been four contractors that were eligible, so when she disqualifies Torres, the government isn't being told who to award the contract and the government still gets to pick among a number of people. Would that change your argument here, at least get rid of one or two of your arguments? It would be more nuanced, certainly, but our problem is not simply that the court ordered the award to Sagamayor International SA. Our problem is that the court actually disqualified an offer to do that. The trial court made a procurement decision that only the agency should be making. Instead of simply saying, you didn't adequately justify your decision to cancel, you didn't consider mitigation measures, you didn't consider the fact that Torres now has this information that it shouldn't, you didn't consider these relevant factors, and therefore I'm declaring your cancellation to be irrational and I'm returning the procurement to the status quo ante. It took it a step further and said, okay, now that we've returned it to the status quo ante, I'm telling you, you need to disqualify Torres and you need to then proceed to award to the remaining offer if that offer is determined to be responsible. So that's the bridge too far here in terms of the remedy portion of this case. The agency made one corrective action decision. This isn't a situation where there's been serial remands or something like that. Administrative review shouldn't be a game of gotcha where the agency makes a mistake in a determination, makes an irrational decision, and then the court comes back and says, you did it irrationally, so now I'm going to do it for you and I'm going to do it the right way as a matter of efficiency. Florida Power & Light forecloses that, at least in the ordinary circumstances. Again, with just one remand here, there's nothing, or one decision here, there's nothing extraordinary about this case that requires the trial court to throw off the normal way that administrative review is done. So unless the court has any other questions, I respectfully request that the court vacate the trial court's injunction.